UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RONALD DUCOTE | ) | Civil Action |
|     Plaintiff | ) | Case No.: |
| | ) | |
| versus | ) | Section "J" |
| | ) | Judge Barbier |
| BP EXPLORATION & PRODUCTION, INC. | ) | |
| AND BP AMERICA PRODUCTION COMPANY | ) | Magistrate Division "2" |
|     Defendants | ) | Magistrate Judge Wilkinson |

Related to:   12-968 BELO
                in MDL No. 2179

## **BELO COMPLAINT**

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Ronald Ducote, who for his Belo Complaint, respectfully avers:

### **The Parties**

1.

Plaintiff, Ronald Ducote, is a person of the full age of majority and citizen of the State of Louisiana.

2.

Named Defendant is BP Exploration & Production, Inc., a Delaware corporation with its principal place of business in Warrenville, Illinois.

3.

Named Defendant is BP America Production Company, a Delaware corporation with its principal place of business in Houston, Texas. Defendants are referred to hereinafter collectively as "BP."

**Jurisdiction & Venue**

4.

This Court has jurisdiction under 28 U.S.C. §§ 1331 & 1333, 46 U.S.C. § 30101, 46 U.S.C. § 30104, and under the provisions of the general maritime law.

5.

Venue is appropriate pursuant to 28 U.S.C. § 98(a). Plaintiff currently resides in this District, and Mr. Ducote resided in this District at the time of his exposures and injuries alleged herein.

6.

Plaintiff designates this matter as a claim under Rule 9(h) of the Federal Rules of Civil Procedure.

**Allegations**

7.

Following the April 20, 2010, BP *Deepwater Horizon* blowout and resulting oil spill, BP hired Plaintiff, Ronald Ducote, to work as an oil spill cleanup worker as part of the "Vessels of Opportunity Program" (hereinafter the "VoO program"). Upon information and belief, Mr. Ducote's "direct employer" under the VoO Program was U.S. Maritime Services, Inc., 365 Canal Street, Suite 2500, New Orleans, Louisiana 70130.

8.

While employed under the VoO Program, Mr. Ducote was a vessel captain performing various cleanup operations and duties as ordered, directed and instructed by BP.  Mr. Ducote worked exclusively on vessels operating within the wetlands and navigable coastal waters of the Parishes of St. Bernard and Plaquemines in the State of Louisiana.  Mr. Ducote was employed under the VoO Program from approximately June 2010 through December 2010.

9.

During the course of his employment under the VoO Program, Mr. Ducote came into dermal and airborne contact with and exposure to crude oil.  Crude oil contains benzene and other volatile organic compounds that are generally accepted as toxic, volatile and carcinogenic.

10.

During the course of his employment under the VoO Program, Mr. Ducote also came into dermal and airborne contact with and exposure to chemical dispersants used by BP, including Corexit® 9500, Corexit® EC9527A and other dispersants.  These dispersants contain multiple toxic and hazardous substances harmful to human health, including compounds that may be carcinogenic.

11.

During and after his employment under the VoO Program, Mr. Ducote developed psychological, dermal and respiratory complications as a result of his exposure.  Mr. Ducote has undergone a course of medical care in an attempt to treat his injuries and disorders.

12.

BP knew and had reason to know about significant deficiencies in its oil spill response operations relating to worker safety. BP, aware of the risks that response vessels would face, failed to provide adequate training and vessel inspections and ignored worker safety concerns, even in the face of government warnings and notification that vessel workers in its VoO Program, as well as other offshore and onshore cleanup workers, were complaining of illnesses after being exposed to oil and dispersants.

13.

At all times relevant to this litigation, BP knew or should have known that:

a) Crude oil contains chemicals hazardous to human health;
b) Chemical dispersants contain chemicals hazardous to human health;
c) Mr. Ducote was entitled to adequate and timely warnings of the harmful effects of exposure to crude oil and chemical dispersants and the hazardous substances that crude oil and dispersants contain; and
d) Mr. Ducote should have been provided proper protective clothing and respirators when engaging oil spill cleanup activities.

14.

BP focused primarily on profit and disregarded public and environmental health and safety while undertaking ultra-hazardous activities on the *Deepwater Horizon* by, among other things, failing to use reasonably safe dispersant chemicals in the attempt to respond to the oil spill, and failing to take all appropriate measures, training and safety options to prevent the blowout and resulting oil spill.

15.

BP, by its conscious and/or deliberate unreasonable acts and/or omissions complained of herein, displayed gross negligence, reckless indifference, willfulness, and/or wantonness.

## Causes of Action

### Negligence under the General Maritime Law.

16.

Plaintiff re-alleges each and every allegation set forth in all preceding paragraphs as if fully restated herein.

17.

The existence and breach of BP's legal duties are established under the general maritime law.

18.

At all times material hereto, BP owed duties of ordinary and reasonable care to Plaintiff in connection with the drilling operations and maintenance of the *Deepwater Horizon*, including its appurtenances and equipment. BP additionally owed duties to guard against and/or prevent the risk of an oil spill and to mitigate the harm if an oil spill did occur.

19.

Further, BP owed a duty to Mr. Ducote to exercise due care in the operation, maintenance, handling, design, implementation and execution of the relief and recovery measures.

20.

BP had a heightened duty of care to Mr. Ducote because of the great danger associated with exposure to oil, dispersants, and/or other hazardous chemicals.

21.

The risk of injury and loss to Mr. Ducote was reasonably foreseeable, and BP knew of the dangers associated with deepwater drilling.  Specifically, at all times relevant to this litigation, BP knew or should have known that:

a) Crude oil contains chemicals hazardous to human health;
b) Chemical dispersants contain chemicals hazardous to human health;
c) Mr. Ducote should have been adequately and timely warned of the harmful effects of crude oil and chemical dispersants, and the hazardous substances that they contain; and
d) Failure to exercise reasonable care in the operation, maintenance, handling, design, implementation and execution of the relief and recovery measures would result in harm to Mr. Ducote.

22.

BP breached its duty of care to Plaintiff in the following nonexclusive respects:

a) Failing to prevent the explosion on board the *Deepwater Horizon*;
b) Failing to cap the Macondo well in a timely manner;
c) Failing to warn Plaintiff, public officials, and government agencies of the harmful effects of crude oil, chemical dispersants and any mixture thereof, and the hazardous chemicals they contain;
d) Failing to properly train and equip cleanup workers to avoid exposure to hazardous substances encountered in connection with relief effort;
e) Failing to conform to the provisions of the National Contingency Plan relating to the use of aerial chemical dispersants in the proximity of vessels in shallow water;
f) Failing to coordinate and conduct aerial spraying sorties in a manner so as to eliminate the risk of vessels and crewmembers being exposed to aerial chemical dispersants; and
g) Failing to otherwise exercise reasonable care in the operation, maintenance, handling, design, implementation and execution of the relief and recovery measures.

23.

BP's breach of their duties posed an unreasonable risk of harm to Plaintiff, and Plaintiff suffered injury, loss, and damages as a direct and proximate result of BP's breach of the aforementioned duties.

24.

Furthermore, as an element of damages, Plaintiff is entitled to medical monitoring relief. Mr. Ducote's exposure to oil, dispersants, and harmful chemicals may lead to additional serious health problems, diseases, and medical conditions that may be prevented or minimized by timely medical diagnosis and treatment.  BP's failure to provide such a protocol is callous, willful, wanton, or otherwise tortious.

**Gross Negligence under the General Maritime Law**

25.

Plaintiff re-alleges each and every allegation set forth in all preceding paragraphs as if fully restated herein.

26.

BP had a heightened duty of care to Plaintiff because of the great danger associated with exposure to oil, dispersants, and/or other hazardous chemicals.

27.

BP breached their legal duty to Plaintiff and failed to exercise reasonable care and acted with reckless, willful, and wanton disregard in the negligent failure to prevent and contain the oil spill.

28.

BP knew or should have known that their willful, wanton, and reckless conduct would cause injury to Plaintiff.

29.

BP's willful, wanton, reckless, and/or grossly negligent conduct is the factual and legal cause of Plaintiff' injuries and damages.

30.

Similarly, for the reasons set forth above Plaintiff is entitled to medical monitoring relief as an element of damages for BP's gross negligence.

## **Negligence *Per Se* under the General Maritime Law and Federal Law**

31.

Plaintiff re-alleges each and every allegation set forth in all preceding paragraphs as if fully restated herein.

32.

BP's conduct with regard to the manufacture, maintenance and/or operation of oil drilling vessels such as the *Deepwater Horizon*, the release of hazardous and toxic chemicals into the environment, and the application of dispersants and other hazardous chemicals is governed by federal laws and permits issued under the authority of these laws.  These laws and permits create statutory and regulatory standards that are intended to protect and to benefit Plaintiff, including but not limited to those that govern the National Oil and Hazardous Substances Contingency Plan, *see*, *e.g.*, 40 CFR § 300.150.  BP failed to adhere to the requirements for response actions established by the National Consent Contingency Plan, 29 CFR § 1910.120.  BP, therefore, breached its responsibilities under this regulatory provision.

33.

In addition, the Federal Bureau of Safety and Environmental Enforcement found that BP violated the following federal regulations:

- a) BP failed to protect health, safety, property, and the environment by failing to perform all operations in a safe and workmanlike manner, in violation of 30 CFR § 250.107(a)(1);
- b) BP did not take measures to prevent unauthorized discharge of pollutants into offshore waters, in violation of 30 CFR § 250.300;

    c)        BP failed to take necessary precautions to keep the well under control at all times, in violation of 30 CFR § 250.401(a);

    d)        BP did not cement the well in a manner that would properly control formation pressures and fluids and prevent the direct or indirect release of fluids from any stratum through the well bore into offshore waters in violation of 30 CFR §§ 250.420(a)(1)-(2);

    e)        BP failed to conduct an accurate pressure integrity test, in violation of 30 CFR § 250.427;

    f)        BP failed to maintain the *Deepwater Horizon*'s BOP system in accordance with the American Petroleum Institute's recommended procedure 53 section 18.10.3, in violation of 30 CFR § 250.4468;

    g)        BP failed to obtain approval of the temporary abandonment procedures it actually used at the Macondo well, in violation of 30 CFR § 250.1721(a);

    h)        BP failed to conduct an accurate pressure integrity test at the 13-5/8" liner shoe in violation of 30 CFR § 250.427; and

    i)        BP failed to suspend drilling operations at the Macondo well when the safe drilling margin identified in the approval application for the permit to drill was not maintained, in four separate violations of 30 CFR § 250.427(b).

34.

BP's violations of the statutory and/or regulatory standards constitute negligence *per se* under federal law, as well as general maritime law.

35.

BP had actual and/or constructive knowledge of the facts and circumstances leading to and causing the incidents described herein, which in turn caused Plaintiff' injuries, and their actions and inactions were grossly negligent, reckless, willful and/or wanton.

36.

As a direct and proximate cause of BP's violation of statutory and/or regulatory standards, Plaintiff has suffered injuries and is entitled to damages, including *inter alia*, cost of medical monitoring.

**Punitive Damages**

37.

Plaintiff re-alleges each and every allegation set forth in all preceding paragraphs of as if fully restated herein.

38.

BP recklessly, willfully and/or wantonly caused or contributed to the catastrophic oil spill through their collective and respective disregard for proper drilling, casing, mudding, and cementing procedures.

39.

BP recklessly, willfully and/or wantonly failed to utilize reasonably safe dispersing chemicals in its haphazard attempts to respond to the oil spill, and thereby exacerbated and worsened the pollution of the Gulf of Mexico, and needlessly caused injury to cleanup workers and Gulf residents.

40.

BP's willful, wanton and reckless conduct, as described herein, entitles Plaintiff to punitive damages. The amount of punitive damages recoverable by Plaintiff is not lawfully limited to the amount of their compensatory damages, but rather should be a multiplier of the same sufficient to both punish BP and deter similar wrongdoing in the future.

41.

BP engaged in conduct so reckless, willful, wanton and in such utter and flagrant disregard for the safety and health of the public and the environment and its activities leading up to and/or during the blowout, explosions, fire, and oil spill that an award of punitive damages against it at the highest possible level is warranted and necessary to impose effective and optimal

punishment and deterrence. BP's actions herein were not isolated or accidental, but part of a culture and ongoing pattern of conduct that that consistently and repeatedly ignored risk to others in favor of financial advantage to itself. Plaintiff, society and the environment cannot afford and should never be exposed to the risk of another disaster of the magnitude caused by BP's misconduct.

42.

Accordingly, Plaintiff is entitled to an award of punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiff, Ronald Ducote, respectfully prays that Defendants, BP Exploration & Production, Inc., and BP America Production Company, be served with a copy of this BELO Complaint, and that they be made to appear and answer same within the delays allowed by law, and that after all due and legal proceedings are had herein, for the reasons set forth herein, that there be judgment entered in favor of Plaintiff against Defendants, for all general, special and punitive damages, for past and future monitoring, pre-judgment and post-judgment interest at the maximum rate allowed by law, attorney's fees and costs, and for all further general and equitable relief.

Respectfully submitted,

_____*/s/ Joseph S. Piacun*_____
JOSEPH S. PIACUN, T.A. (25211)
THOMAS A. GENNUSA, II (6010)
REID S. UZEE (31345)
Gennusa, Piacun & Ruli
4405 North I-10 Service Road, Suite 200
Metairie, Louisiana 70006-6564
Telephone: (504) 455-0442
Facsimile: (504) 455-7565
Email: jpiacun@gprlawyers.com
**Attorneys for Plaintiff,**
**Ronald Ducote**